| | |
|---|---|
| JENNIFER HARDIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| LELAND DUDEK,[1] Acting ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' briefs pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), the parties having consented to proceed pursuant to 28 U.S.C. § 636(c). Jennifer Hardin ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for a period of disability and disability insurance benefits ("DIB"). The time for responsive briefs has expired, and the pending motions are ripe for adjudication. On January 21, 2025, the court held oral argument in this matter. Having carefully reviewed the administrative record and the briefs submitted by the parties, the court affirms the Commissioner's decision.

---

[1] Plaintiff's complaint names Martin O'Malley in his official capacity as Commissioner of Social Security. Leland Dudek is now Acting Commissioner of Social Security and therefore is substituted as the defendant to this action. *See* Fed. R. Civ. P. 25(d).

## STATEMENT OF THE CASE

Plaintiff applied for a period of disability and DIB on November 9, 2018, with an alleged onset date of March 1, 2013. (R. 11; 186–90; 1098.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 99; 115; 127–30.) On February 24, 2020, a hearing was held before Administrative Law Judge ("ALJ") William Diggs who issued an unfavorable decision on March 12, 2020. (R. 8–27; 51–82.) On November 17, 2020, the Appeals Council denied Plaintiff's request for review. (R. 1–5.) At that time, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. On January 20, 2021, Plaintiff initiated an action in this court, seeking judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g). *Hardin v. Kijakazi*, No. 7:21-CV-6-FL (E.D.N.C. filed Jan. 20, 2021). On September 20, 2022, the court reversed and remanded the matter to the Commissioner pursuant to sentence four. *Hardin v. Kijakazi*, No. 7:21-CV-6-FL, ECF No. 25 (E.D.N.C. Sept. 20, 2022).

Upon remand from this court, the Appeals Council remanded the matter for a new hearing and decision. (R. 1198–1200.) ALJ Adrienne Porter held a new hearing on September 19, 2023, and issued an unfavorable decision on January 2, 2024. (R. 1095–1148.) This made the ALJ's second decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.984(a). On April 29, 2024, Plaintiff initiated this action pursuant to 42 U.S.C. § 405(g), exercising her right to direct judicial review of the ALJ's second unfavorable decision. *See* 20 C.F.R. § 404.984(d) (ALJ's decision

after federal court remand is final decision of Commissioner if claimant files no exceptions and the Appeals Council does not otherwise assume jurisdiction).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4); *Albright v. Comm'r of SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's residual functional capacity] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981). "If the Commissioner meets [this] burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015).

### III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act ("the Act"). As a preliminary matter, the ALJ found Plaintiff last met the insured status requirements of the Act on September 30, 2018. (R. 1100.) At step one, the ALJ found Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of March 1, 2013, through her date last insured of September 30, 2018. (R. 1100.) Next, the ALJ determined Plaintiff had the following severe impairments through the date last insured: "degenerative disc disease of the lumbar spine status-post microdiscectomy and hemilaminectomy and thoracolumbar scoliosis." (R. 1101.)

At step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (R. 1103.) The ALJ expressly considered Listings 1.15 and 1.16. (R. 1103–04.)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she must be able to alternate position for one to two minutes after every hour of standing or walking. She can remain on task in all positions and during all transitions. She can occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; and can occasionally balance, stoop, kneel, crouch, and crawl. She can occasionally work around unprotected heights and moving mechanical parts. She can tolerate occasional exposure to dust, odors, fumes, and other pulmonary irritants, []ext[r]eme cold, extreme heat, and vibration.

5

(R. 1104.) In making this assessment, the ALJ stated that she considered Plaintiff's symptoms and the evidence (both "objective medical" and "other"), based on the requirements of 20 C.F.R. § 404.1529 and SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017), and found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms "not entirely consistent with the medical evidence and other evidence in the record." (R. 1104–05.)

At step four, the ALJ concluded that Plaintiff was capable of performing past relevant work as a cashier checker (DOT #211.462-026) and a general clerk (DOT #209.562-010). (R. 1108.) The ALJ made alternative step-five findings, determining there were other jobs that existed in significant numbers in the national economy that Plaintiff could have performed, considering her age, education, work experience, and RFC, namely: marker (DOT #209.587-034), microfilm mounter (DOT #208.685-022), and collator operator (DOT #208.685-010). (R. 1109.) The ALJ concluded Plaintiff was not under a disability at any time from March 1, 2013, the alleged onset date, through September 30, 2018, the date last insured. (R. 1110.)

IV. Plaintiff's Argument

Plaintiff argues the ALJ failed to apply the correct legal standard when evaluating Plaintiff's depression.[2] (Pl.'s Br. [DE #12] at 5.) Specifically, Plaintiff

---

[2] Though not formally argued, Plaintiff points out that ALJ Porter did not analyze the February 20, 2020, statement of Plaintiff's primary care physician. (Pl.'s Br. at 8; R. 1335.) The statement summarizes a May 2019 evaluation but is not a medical opinion as defined by 20 C.F.R. § 404.1513 as it does not state what Plaintiff can do despite her impairments, nor does it explicitly comment on her abilities or limitations in performing the mental demands of work. *See* (R. 1335); *Desmarais v. O'Malley*, No. 7:23-CV-7-M, 2024 WL 1328200, at *9 (E.D.N.C. Feb. 6, 2024) (finding

6

asserts the ALJ "required 'abnormal' objective medical evidence to substantiate [Plaintiff's] symptom severity." (*Id.* at 6.) Plaintiff contends this does not comply with *Arakas v. Comm'r of SSA*, 983 F.3d 83 (4th Cir. 2020), and *Shelley C. v. Comm'r of SSA,* 61 F.4th 341 (4th Cir. 2023). (Pl.'s Br. at 6.) The Commissioner responds that the ALJ did not require objective medical evidence to support Plaintiff's statements, but instead appropriately balanced record evidence. (Comm'r Br. [DE #17] at 12–14.)

It is not clear from Plaintiff's brief at which step of the sequential evaluation process Plaintiff contends the ALJ erred. At oral argument, Plaintiff argued an incorrect legal standard was used throughout the ALJ's assessment. (Audio of January 21, 2025, Oral Argument, at 11:11–11:13 a.m.) Moreover, though Plaintiff argues the ALJ applied an incorrect legal standard, Plaintiff also appears to contend that substantial evidence does not support the ALJ's decision. (*See* Pl.'s Br. at 7–8 (discussing medical opinions and subjective statements showing limitations related to Plaintiff's depression).) As such, the court reviews the ALJ's analysis for correct legal standards and substantial evidence at steps two and three as well as throughout the RFC assessment and symptom evaluation. For the reasons explained below, the court affirms the Commissioner's decision.

---

physician statement "not a medical opinion subject to the ALJ's evaluation" because it does not mention how symptoms will impact or limit ability to work), *M. & R. adopted*, 2024 WL 1310673 (E.D.N.C. Mar. 27, 2024).

7

## A. Step Two

When evaluating the severity of a mental impairment at step two, an ALJ must consider "four broad functional areas" including understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). The degree of limitation in each functional area is rated, and if degrees of limitation are rated as "none" or "mild," a non-severe impairment finding is likely. *See* 20 C.F.R. § 404.1520a(c)(4), (d)(1).

When assessing Plaintiff's depression, ALJ Porter analyzed each functional area and designated either no limitations or mild limitations, supporting her analysis with evidence in the record. (R.1102.) First, the ALJ pointed out that Plaintiff neither saw nor was referred to a mental health treatment provider. (R. 1103.) The ALJ also noted that Plaintiff's symptoms of depression improved with medication. (R. 494, 1102.) The ALJ referenced Plaintiff's performance of a range of daily activities, including shopping, cleaning, and some socializing. (R. 231–38, 1102.) Lastly, ALJ Porter considered opinions of the state agency psychological consultants who found no severe mental health impairments and no limitations in the four functional areas. (R. 92–94, 108–110, 1103.) Though ALJ Porter acknowledged Plaintiff's primary care physician had diagnosed Plaintiff with depression, the ALJ found there was no evidence of depression symptoms leading to moderate or marked limitations in functioning. (R. 1102); *see Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986)

(diagnosis of a psychological disorder alone is insufficient to prove disability, as there must also be "a showing of related functional loss").

Plaintiff's argument that ALJ Porter "required abnormal mental status examinations to substantiate [Plaintiff's] subjective statements" is without merit. (Pl.'s Br. at 6.) ALJ Porter relied on myriad evidence outlined above, including Plaintiff's own testimony and function report, as well as Plaintiff's reports to her primary care physician that her symptoms of depression had improved. (R. 231–38, 494, 1102–103.) Accordingly, the ALJ did not require "abnormal" evidence; instead, she balanced longitudinal evidence to make her determination. *See* 20 C.F.R. § 404.1520a(c)(1)–(2) (assessment of limitations should be "longitudinal" and include, among other things, "laboratory findings," "effects of . . . symptoms," and how functioning is affected by medication). Thus, the ALJ's finding that Plaintiff's depression was non-severe was reached through application of the correct legal standard and supported by substantial evidence. *See Karen M. v. O'Malley,* No. 1:23-CV-1116, 2024 WL 4682738, at *2–7 (M.D.N.C. Sept. 24, 2024) (analyzing similar assessment by an ALJ of plaintiff's depression at step two and finding it adequate to support judicial review), *M. & R. adopted sub nom., Moore v. O'Malley*, 2024 WL 4681553 (M.D.N.C. Nov. 5, 2024).

### B. Step Three

In determining whether a listing is met or equaled, an ALJ must consider all evidence in the case record about the claimant's impairments and the effects on the claimant. 20 C.F.R. § 404.1526(c). Plaintiff does not point to any specific error in the

9

ALJ's listing analysis. (*See* Pl.'s Br.) When evaluating Plaintiff's depression, ALJ Porter "considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1)." (R. 1102.) She then determined that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1). (R. 1103.) As articulated above, ALJ Porter's analysis of the four functional areas was supported by substantial evidence. *See* 20 CFR, Part 404, Subpart P, Appendix 1 (outlining requirements to meet listing for mental disorders). ALJ Porter thus applied the correct legal standards for evaluating Plaintiff's depression at step three, and her analysis was supported by substantial evidence.

### C. RFC Assessment

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96–8p, 1996 WL 374184, at *1; *see also* 20 C.F.R. § 404.1545(a)(1). In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 404.1545(a)(4). The ALJ must consider the combined effects of the limitations imposed by a claimant's impairments, even those that are not severe. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); 20 C.F.R. § 404.1545(a)(2). However, it is the "claimant's burden to establish how medically-

documented impairments result in functional limitation." *Battle v. Berryhill*, No. 5:15-CV-537-D, 2017 WL 782562, at *4 (E.D.N.C. Jan. 24, 2017), *M. & R. adopted*, 2017 WL 780795 (E.D.N.C. Feb. 28, 2017); *see also* 20 C.F.R. § 404.1512.

Though not explicit, Plaintiff appears to challenge the ALJ's RFC assessment as it relates to Plaintiff's mental limitations. (*See* Pl.'s Br. at 8 ("[Plaintiff is entitled to rely upon her subjective complaints and subjective evidence to establish her degree of limitations . . . [and] has alleged limitations with regards to her ability to concentrate, persist, and maintain pace.").) However, the ALJ properly accounted for Plaintiff's depression in the RFC assessment. After finding Plaintiff's depression to be non-severe and proceeding to the RFC analysis, the ALJ noted that the "residual functional capacity assessment reflects the degree of limitation the undersigned found in the [step two] mental functional analysis." (R. 1103.) As such, the ALJ adequately considered the limitations of Plaintiff's depression and how those limitations impact her ability to work. Moreover, as explained above, ALJ Porter's evaluation of Plaintiff's depression was supported by substantial evidence, including Plaintiff's symptom improvement with medication, her own function report, her lack of mental health treatment referral, and the opinions of state psychological consultants. (R. 1102–03.) Thus, the RFC assessment properly accounted for Plaintiff's mental limitations and was supported by substantial evidence.

### C. Symptom Evaluation

Evaluation of the severity of a claimant's symptoms is separate and distinct from the RFC assessment, although the two inquiries are related. *Dowling v. Comm'r of SSA*, 986 F.3d 377, 387 (4th Cir. 2021) (explaining the relationship between a symptom evaluation and RFC assessment). A symptom evaluation requires two steps: "[f]irst, the ALJ must determine whether objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to cause the claimant's alleged symptoms," and then second, "the ALJ must assess the intensity and persistence of the alleged symptoms." *Arakas*, 983 F.3d at 95 (citing 20 C.F.R. § 404.1529 and SSR 16–3p, 2016 WL 1119029 (Mar. 16, 2016)). Importantly, a claimant is "entitled to rely exclusively on subjective evidence" to prove that her symptoms are so severe that they prevent her from working a full day. *Arakas*, 983 F.3d at 95–96 (quoting *Hines v. Barnhart*, 453 F.3d 559, 563–65 (4th Cir. 2006)). *See also Oakes v. Kijakazi*, 70 F.4th 207, 215–17 (4th Cir. 2023).

Plaintiff also takes issue with the ALJ's analysis of her symptoms related to depression, arguing the analysis is legally incorrect in light of the Fourth Circuit's decisions in *Arakas* and *Shelley C.* (Pl.'s Br. at 6–10.) Preliminarily, ALJ Porter conducted the appropriate two-step symptom evaluation analysis. (R. 1105–08.) Moreover, Plaintiff's reliance on *Arakas* and *Shelley C.* is misplaced. In *Arakas*, the Fourth Circuit held that "ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not

12

Case 7:24-cv-00377-KS    Document 21    Filed 02/25/25    Page 12 of 14

produce such evidence." *Arakas*, 983 F.3d at 97. *Shelley C.* extended the ruling in *Arakas* to depression. *Shelley C.*, 61 F.4th at 361–62. However, these cases do not suggest that an ALJ should ignore objective evidence and fully credit subjective statements. Rather, an ALJ cannot "requir[e] claimants to provide medical evidence that would be impossible to produce given their specific medical conditions." *Clifford E. v. O'Malley*, No. 1:23-CV-704-LPA, 2024 WL 3105669, at *10 (M.D.N.C. June 24, 2024) (quoting *Anthony P. v. O'Malley*, No. 1:22-CV-291-DJN, 2024 WL 965608, at *3 (E.D. Va. Mar. 6, 2024)).

When evaluating Plaintiff's depression, the ALJ weighed objective medical evidence as well as other evidence, including Plaintiff's daily activities, function report, and subjective statements to her primary care physician. ALJ Porter did not require objective medical evidence; instead, she balanced medical evidence with Plaintiff's own subjective statements. Articulated above are several examples of ALJ Porter's reliance on Plaintiff's subjective statements about her depression. While Plaintiff may disagree with the ALJ's evaluation of her symptom severity, this court is not permitted to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] own judgment" for the ALJ's. *See Craig*, 76 F.3d at 589. Accordingly, the ALJ properly followed the two-step process set forth in 20 C.F.R. § 404.1529 and expounded upon in SSR 16–3p, and did not violate the standards articulated in *Arakas* and *Shelley C.* Substantial evidence supports the ALJ's findings, and the Commissioner's decision should therefore be affirmed.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is AFFIRMED.

This 25th day of February 2025.

_____
KIMBERLY A. SWANK
United States Magistrate Judge